UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

CAML GHANA LIMITED, RATEL GROUP LIMITED,
CGA MINING LIMITED, and CENTRAL ASIA
MINERALS LIMITED,

Plaintiffs,

-v-

WESTCHESTER RESOURCES LIMITED,

Defendant.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/2015

13 Civ. 8124 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case arises out of a joint venture between CAML Ghana Limited ("CAML Ghana")

and Westchester Resources Limited ("Westchester") to prospect for gold on a plot of land (the

"Tenement") in the Ashanti Gold Belt in Ghana.  After relations between CAML Ghana and

Westchester broke down, CAML Ghana brought claims to arbitration in London, pursuant to an

arbitration clause in the parties' agreement.  Soon after, Westchester filed suit in court in Ghana,

arguing that its claims of fraud were not arbitrable under Ghanaian law, which governs the

parties' agreement.  CAML Ghana prevailed in the arbitration, and then petitioned this Court to

confirm the arbitral award; Westchester challenged the petition on various grounds.  After a

period of active litigation, the parties resolved that dispute through a stipulation, which this Court

so-ordered.

Now pending before the Court is CAML Ghana's motion to enforce this Court's

stipulation and order.  The parties' dispute turns on the interpretation of that stipulation and

order, namely, whether Westchester's agreement to dismiss the Ghana litigation covers litigation

against certain third parties or only against CAML Ghana.  For the following reasons, the Court finds CAML Ghana's interpretation of the stipulation and order clearly correct and grants the motion to enforce.

## I.      Background[1]

### A.      The Joint Venture Agreement

In 2008, CAML Ghana and Westchester entered into a Joint Venture Agreement ("JVA") to conduct exploration and mine for gold.  Caruso Decl. ¶ 2.  Under the JVA, CAML Ghana agreed to assess the feasibility of gold-mining in the Tenement and to make certain payments. Dkt. 9, Ex. 1-A ("JVA"), at § 3.  Westchester, for its part, agreed to transfer a 51% interest in the Tenement to CAML Ghana.  JVA § 4.1(c).  The agreement states that "any dispute arising out of or in connection with this Agreement . . . may be referred by a party to arbitration," which "shall be conducted in accordance with the Rules of the London Court of International Arbitration (LCIA)" and, "[u]nless otherwise agreed by all parties[,] . . . shall be held in London, England." JVA §§ 17.1, 17.4.  The agreement is governed by the laws of Ghana.  JVA § 20.9.

### B.      The Arbitration and the Ghana Litigation

In March 2011, Westchester challenged whether CAML Ghana had satisfied the requirements to acquire the 51% interest in the Tenement.  Caruso Decl. ¶ 4.  To resolve this dispute, CAML Ghana initiated arbitration in London, while Westchester commenced litigation in Ghana.  *Id.* ¶¶ 5–6.  The relevant history of each action is briefly summarized below.

First, on November 3, 2011, CAML Ghana filed a request for arbitration with the LCIA. *Id.* ¶ 5.  Although Westchester initially participated in the arbitration, *see id.*, it later challenged

---

[1] These facts are drawn from the Declaration of Kenneth A. Caruso in support of CAML Ghana's motion to enforce the stipulation and order entered in this action, and the documents attached thereto.  Dkt. 74 ("Caruso Decl.").

the jurisdiction of the arbitral tribunal, arguing that fraud claims it had asserted were outside the scope of the JVA's arbitration clause, *id.* ¶ 7. The tribunal rejected Westchester's jurisdictional challenge and held that Westchester had breached the JVA by initiating the Ghana litigation; it therefore ordered Westchester to terminate that litigation. *Id.* Westchester refused to comply with the tribunal's interim order and formally withdrew from the arbitration. *Id.* ¶¶ 7–8.

On July 29, 2013, the arbitral tribunal held a final hearing on the merits. *Id.* ¶ 18. Westchester did not participate. *Id.* On September 26, 2013, the tribunal issued its Award, ruling in favor of CAML Ghana on all claims. *Id.* ¶ 19. The Award granted CAML Ghana, among other remedies, declaratory relief establishing that CAML Ghana held the 51% interest in the Tenement and dismissing all of Westchester's counterclaims. *Id.*

Second, on December 15, 2011, several weeks after CAML Ghana had initiated the arbitration, Westchester commenced the Ghana litigation by bringing suit in the Superior Court of Judicature in the High Court of Justice in Accra, Ghana (the "Ghana Court") against CAML Ghana, associated entities,[2] and another company, St. Augustine Gold & Copper Ltd. ("St. Augustine"). *Id.* ¶ 6. Westchester brought claims for breach of contract and fraud. *Id.*

The Ghana Court initially stayed the Ghana litigation, with the consent of all parties, pending resolution of the arbitration. *Id.* After withdrawing from the arbitration, however, Westchester moved to set aside the stay. *Id.* ¶ 9. On November 27, 2012, the Ghana Court granted Westchester's motion, and litigation resumed. *Id.* CAML Ghana filed an interlocutory appeal challenging the decision to lift the stay; on February 12, 2013, the Ghana Court issued

---

[2] The "associated entities" are Ratel Group Ltd., CGA Mining Ltd., and Central Asia Minerals Ltd. These companies are also parties to this action; the Court refers to them, collectively, as "CAML Ghana."

another stay of the Ghana litigation pending resolution of that appeal. *Id.* ¶ 12. The appeal was still pending when the arbitral tribunal issued its Award on July 29, 2013. *See id.*

On December 12, 2012, during the brief interlude between the two stays of the Ghana litigation, Westchester moved there to join the Portland House Group Limited and Portland House Investments Limited (collectively, the "Portland Companies") as additional defendants. *Id.* ¶ 13. Westchester claimed that the Portland Companies held certain collateral, which Westchester could use to execute a judgment in its favor in the Ghana litigation. *Id.* Ex. 3, at 10–12. The Ghana Court granted Westchester leave to serve the motion for joinder outside the jurisdiction and denied the Portland Companies' motion to set aside that order. *Id.* ¶ 16. The Portland Companies then filed an interlocutory appeal challenging the Ghana Court's decision. *Id.* In February 2013, before that appeal was resolved, the Ghana Court stayed the joinder proceeding along with the other Ghana litigation proceedings. *Id.* ¶ 17.

### C.   This Action

On November 14, 2013, CAML Ghana petitioned this Court to confirm the arbitral award, enter judgment, and issue an anti-suit injunction against the Ghana litigation. Dkt. 1, 7–9. On January 30, 2014, Westchester moved to dismiss for lack of personal jurisdiction. Dkt. 16–18. On February 6, 2014, Westchester filed another motion, arguing that the Court should dismiss the petition on grounds of forum non conveniens and comity, and that the arbitrator lacked jurisdiction to decide the fraud claim. Dkt. 21–24, 28.

On May 20, 2014, after briefing and argument on CAML Ghana's petition and Westchester's motions to dismiss, and with the encouragement of the Court, the parties executed a stipulation transferring this case to the Court's suspense docket. On May 21, 2014, the Court signed and so-ordered the stipulation. Dkt. 71 ("SDNY Stipulation and Order"). The effect of

the SDNY Stipulation and Order was to consolidate before the High Court of England and Wales—which all parties agreed was an appropriate forum—resolution of the disputes between the parties that were pending in various fora.  Specifically, Westchester agreed to "commence a proceeding in the High Court of England and Wales raising any and all grounds that it may have to set aside the awards" issued by the LCIA (the "London proceeding" or "English proceeding"). *Id.* ¶ 1.  Westchester also agreed to stay the Ghana litigation pending final disposition of the London proceeding, *id.* ¶ 2, and to execute a stipulation discontinuing the Ghana litigation with prejudice, which CAML Ghana is entitled to hold during the London proceeding and to file if the English court reaches a decision in its favor, *id.* ¶¶ 3–4.  All parties agreed to "abide by a final decision of the English Courts," *id.* ¶ 4, and to engage in "no further litigation arising out of, or in connection with" the JVA or the arbitration, subject to certain exceptions, *id.* ¶ 5.  Finally, the parties consented to this Court's continuing jurisdiction over this action to enforce the SDNY Stipulation and Order.  *Id.* ¶ 6.

On August 18, 2014, CAML Ghana filed a motion to enforce the SDNY Stipulation and Order, Dkt. 72, along with a memorandum of law, Dkt. 73 ("Pet. Br."), and a declaration, Dkt. 74 ("Caruso Decl.").  According to CAML Ghana, the parties have stayed the Ghana litigation, but Westchester has not provided it with the agreed-upon executed stipulation discontinuing that litigation.  Pet. Br. 12.  CAML Ghana explains that, although Westchester acknowledges its duty to provide CAML Ghana with a stipulation discontinuing the Ghana litigation, the parties dispute whether the SDNY Stipulation and Order requires Westchester to execute a stipulation that would discontinue the action solely against CAML Ghana (as Westchester argues) or against the Portland Companies as well (as CAML Ghana contends).  *Id.*

On September 25, 2014, Westchester filed its opposition. Dkt. 80 ("Resp. Br."). There, Westchester defends its position that the SDNY Stipulation and Order does not require it to include the Portland Companies in the provisional stipulation of discontinuance. *See id.* 1–2, 7. On October 20, 2014, CAML Ghana submitted its reply. Dkt. 81 ("Pet. Reply").

## II.    Discussion

The question presented by the parties is a narrow one: Pursuant to the SDNY Stipulation and Order, must Westchester execute—and, depending on the outcome of the London proceeding, permit CAML Ghana to file—a stipulation discontinuing the Ghana litigation as to CAML Ghana and the Portland Companies, or as to CAML Ghana only? Resolution of this issue turns on the proper interpretation of the SDNY Stipulation and Order.

### A.    Applicable Legal Principles

Stipulations "reflect a contract between the parties" and are, therefore, generally construed according to "ordinary rules of contract interpretation." *Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007); *see also, e.g., United States v. Nee*, 573 F. App'x 37, 39 (2d Cir. 2014) (summary order); *Cameron Int'l Trading Co. v. Hawk Importers, Inc.*, 501 F. App'x 36, 38 (2d Cir. 2012) (summary order). But a stipulation is also "'an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties.'" *In re Pandora Media, Inc.*, No. 12 Civ. 8035 (DLC), 2013 WL 5211927, at *4 (S.D.N.Y. Sept. 17, 2013) (quoting *United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995)). A court cannot "'randomly expand or contract the terms agreed upon'" by the parties, but "judicial discretion in flexing its supervisory and enforcement muscles is broad." *U.S. ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester County*, 712 F.3d 761,

767 (2d Cir. 2013) (quoting *Davis v. N.Y.C. Hous. Auth.*, 278 F.3d 64, 80 (2d Cir. 2002))
(internal quotation marks omitted).

      Both parties apply New York law governing contract interpretation, *see* Pet. Br. 15; Resp.
Br. 8, and Second Circuit case law supports applying the law of the forum to stipulations entered
in federal courts. *See Doe*, 481 F.3d at 81 n.3 ("This court has implicitly held that the state law
of the forum applies to stipulations settling federal claims.") (citing *Torres v. Walker*, 356 F.3d
238, 245–46 (2d Cir. 2004) (applying New York law to a settlement agreement entered in the
Northern District of New York)). Under New York law, "'[t]he fundamental objective of
contract interpretation is to give effect to the expressed intentions of the parties.'" *Lockheed
Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *Klos v. Polskie
Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)) (alteration in original). The threshold question
is whether the "language the parties have chosen is ambiguous." *Gary Friedrich Enters., LLC v.
Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013). Language is ambiguous "only if a
contract term 'is capable of more than one meaning when viewed objectively by a reasonably
intelligent person who has examined the context of the entire integrated agreement.'" *In re
Lehman Bros. Holdings Inc.*, 761 F.3d 303, 309 (2d Cir. 2014) (quoting *Lockheed Martin*, 639
F.3d at 69). If the contract "is unambiguous on its face, it must be enforced according to the
plain meaning of its terms." *Lockheed Martin*, 133 F.3d at 69 (citing *South Rd. Assocs., LLC v.
IBM*, 4 N.Y.3d 272, 793 (2005)). If the contract "is ambiguous, a court may consider extrinsic
evidence of the parties' intent." *Lehman Bros.*, 761 F.3d at 309.

    **B.**    **Analysis**

      The disputed provision of the SDNY Stipulation and Order states that "Westchester shall
execute a stipulation discontinuing the Ghana Litigation with prejudice ('Ghana Stipulation of

Discontinuance'), to be held by Petitioners' counsel (White & Case) pending disposition of the London proceeding, subject to Paragraph 4." SDNY Stipulation and Order ¶ 3. Paragraph 4 provides that CAML Ghana "may file the Ghana Stipulation of Discontinuance" if the arbitration awards are wholly confirmed but must return the Ghana Stipulation of Discontinuance to Westchester if the awards are wholly set aside. *Id.* ¶ 4. Significant here, Paragraph 2 defines "the Ghana Litigation" as "Suit No. 149/2012 and all related appeals" in "both courts," referring to the Ghanaian trial and appellate courts. *Id.* ¶ 2. And, equally significant, Paragraph 2 states that this docket number encompasses the proceedings against CAML Ghana and against the Portland Companies. *See id.* ¶¶ 2A, 2B(1)(a).

The language in Paragraph 2 is unambiguous—it "has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Lockheed Martin*, 639 F.3d at 69 (citing *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007)). It plainly provides that the Ghana Stipulation of Discontinuance shall cover "the Ghana Litigation," meaning "Suit No. 149/2012 and all related appeals." SDNY Stipulation and Order ¶¶ 2–3. And no person could reasonably dispute that Suit No. 149/2012 includes the Portland Companies proceedings, and that the Portland Companies' interlocutory appeal is a "related appeal." *Id.* ¶ 2B(1)(a).

Other provisions in the SDNY Stipulation and Order reinforce this commonsense reading. In particular, Paragraph 5 states that, "[s]ubject to Paragraph 5A, there will be no further litigation in any jurisdiction arising out of, or in connection with, the Joint Venture Agreement, the LCIA Arbitration, the English proceeding or the Ghana Litigation." *Id.* ¶ 5. Pursuant to Paragraph 5A, "[t]he Parties agree that any claims or litigation between Westchester and St. Augustine Gold and Copper Ltd. is expressly excluded from the operation or effect of this Stipulation and Order, including, but not limited to, the operation and effect of this

Paragraph 5." *Id.* ¶ 5A. Applying "the familiar principle of *expressio unius*"—that "the mention of one thing implies the exclusion of the other"—the parties' express exclusion of St. Augustine from the provisions of the SDNY Stipulation and Order mandating discontinuance and precluding further litigation makes clear, by implication, that those provisions apply to the Portland Companies because they are not similarly excluded. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 221 (2d Cir. 2009) (quoting *Hardy v. N.Y. City Health & Hosps. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999)) (internal quotation marks omitted).

In defense of its contrary interpretation, Westchester emphasizes that the "only mention" of the Portland Companies in the SDNY Stipulation and Order is in Paragraph 2B, which "pertains *solely* to the stay of the Portland Companies' appeal." Resp. Br. 4–5. Westchester is correct that Paragraph 2B, considered in isolation, requires "a stay of the Portland Companies' appeal—and nothing else." *Id.* at 5. But the Court must "read the integrated contract 'as a whole to ensure that undue emphasis is not placed upon particular words and phrases.'" *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (quoting *Bailey v. Fish & Neave*, 8 N.Y.3d 523, 528 (2007)). Considering the agreement as a whole, the operative section as to the Ghana Stipulation of Discontinuance is Paragraph 3, not Paragraph 2B. Moreover, in context, Paragraph 2B serves two obvious purposes: First, it clarifies that the parties will stay the interlocutory appeal associated with the Portland Companies joinder proceeding, which had been assigned a unique appellate docket number. *See* SDNY Stipulation and Order ¶ 2B(1)(a). Second, it sets deadlines for the joinder proceeding in the event the Ghana litigation resumes. *See id.* ¶¶ 2B(1)(b), 2B(2). The separate discussion of the Portland Companies in Paragraph 2B does not, therefore, imply that Paragraph 3 or Paragraph 5 excludes those entities.

Because the Court holds that the language of the SDNY Stipulation and Order is unambiguous, it need not reach the parties' other arguments. *See Lockheed Martin*, 133 F.3d at 69. The Court notes, however, that the extrinsic evidence the parties have provided decisively supports CAML Ghana's interpretation. In particular, the drafting history of the SDNY Stipulation and Order reveals that Westchester sought to exclude litigation against the Portland Companies as well as St. Augustine, that CAML Ghana rejected Westchester's proposal, and that the resulting language of the SDNY Stipulation and Order tracks the language put forth by CAML Ghana. Pet. Br. 16–24; Caruso Decl. Exs. 17–20. Also significant, the transcript of a January 2013 oral argument before the Ghana Court reflects that Westchester sought to join the Portland Companies solely in their capacity as trustees for CAML Ghana affiliates. Caruso Decl. Ex. 3, at 12–13. Specifically, Westchester represented that the Portland Companies "are trustees of shares which were used as collateral," *id.* at 13, and Westchester intends "to go after" those shares if the Ghana litigation results in a money judgment in its favor, *id.* at 12. Given Westchester's concession that "we have no cause of action against the persons sought to be joined," *i.e.*, the Portland Companies, *id.* at 13, there is no basis for continuing the proceeding to join the Portland Companies after terminating the substantive litigation against CAML Ghana. Accordingly, if the Court had found the SDNY Stipulation and Order to be ambiguous, it would have reached the same conclusion on the merits.

## CONCLUSION

For the foregoing reasons, the Court grants CAML Ghana's motion to enforce the SDNY Stipulation and Order, and directs Westchester forthwith to furnish CAML Ghana with an executed stipulation of discontinuance that includes the Portland Companies.

The Clerk of Court is directed to terminate the motion pending at docket number 72, and to return this case to the Court's suspense docket.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: January 30, 2015
       New York, New York

11